104 F.3d 356
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
ORIENT SHIPPING ROTERDAM B.V., Plaintiff-Appellant,
v.
HUGO NEU & SONS, Inc., Defendant-Appellee.
 No. 96-7566.
 United States Court of Appeals, Second Circuit.
 Dec. 19, 1996.
 
 APPEARING FOR APPELLANT: Christopher H. Mansuy, Walker & Corsa, New York, NY.
 APPEARING FOR APPELLEE: Herbert M. Lord, Curtis, Mallet-Prevost, Colt & Mosle, New York, NY.
 S.D.N.Y.
 AFFIRMED.
 PRESENT: FEINBERG, ALTIMARI and PARKER, Circuit Judges.
 
 
 1
 Appeal from the United States District Court for the Southern District of New York (Charles S. Haight, Jr., Judge).
 
 
 2
 This cause came to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel for the appellant and appellee.
 
 
 3
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is AFFIRMED.
 
 
 4
 Orient Shipping Rotterdam, B.V. ("Orient"), appeals from the judgment of the United States District Court for the Southern District of New York (Charles S. Haight, Jr., Judge), entered April 11, 1996, denying Orient's claim for demurrage and granting defendant's counterclaim for despatch.
 
 
 5
 Orient, as owner pro hac vice of the M/V MASTROGIORGIS B, sub-chartered the vessel to Hugo Neu & Sons, Inc. ("Hugo Neu") by a voyage charter party entered into June 19, 1992 to carry scrap steel from Jersey City to Bombay, India.
 
 
 6
 While the voyage was underway, an India-wide truckers' strike began. Shredded scrap is a "direct delivery cargo" at Bombay, which means that the discharge of such cargo is made directly from vessels into trucks. As a result of the strike, no scrap metal was discharged for approximately a two-week period at the port of Bombay. Vessels bunched up as they arrived at Bombay for the duration of the strike, and for some time after.
 
 
 7
 When the MASTROGIORGIS arrived on August 9, 1992, three scrap vessels were at berth, and three vessels were at anchorage awaiting berth. The vessel tendered its Notice of Readiness upon arrival, which was accepted by Hugo Neu's agent in India the following day, on August 10, 1996. The vessel remained at anchor for thirty-two days before a berth became available. Discharge commenced on September 10, 1992.
 
 
 8
 The district court properly found that congestion stopped the running of laytime at the discharge port in Bombay. Clause 56 of the charter party sets forth the events which cause the running of laytime to suspend. As the court noted, the clause is drafted in the broadest possible language, permitting a finding that the congestion was a cause "beyond the charterer's/receiver's control," as provided by the clause. As a straightforward matter of contract construction, we conclude that this broad provision was a clear expression of the parties' intent to shift the risk of delay from the charterer to the owner.
 
 
 9
 The court's finding of fact that the circumstances of the delay were within the clause provision is not clearly erroneous as there were sufficient facts for the court to conclude that the effects of the thirteen-day strike created repercussions long outlasting the actual duration of the strike. In addition, there were other factors beyond the charterer's control, including the excessive number of vessels in Bombay at that time, the diminished number of truckers returning to the scrap metal business after the strike, and the fact that discharge was not permitted from all the available berths during the time the MASTROGIORGIS remained at anchorage. Therefore, no assessment of demurrage is appropriate. We affirm the court's conclusion based primarily on two cases.
 
 
 10
 In the first case, The Nordhvalen, 1923 A.M.C. 398 (S.D.N.Y.1923), a strike of longshoremen prevented lighters from being discharged. The strike had been called off before the Nordhvalen arrived, but she had to wait for enough lighters to be discharged before her own cargo could be worked. The court there held that "[t]he Nordhvalen was as directly held up by the past strike as she might have been by a present one." 1923 A.M.C. at 399.
 
 
 11
 The second case is the Steamship Rutherglen Co. Ltd. v. Howard Holder & Partners, Inc., 203 Fed. 848 (2d Cir.1913). The Rutherglen charter party had an exception provision much like Clause 56 in the instant case. In Rutherglen, this Court held that the delay in berthing caused by congestion was beyond the control of the charterer.
 
 
 12
 Finally, the court's granting of despatch to Hugo Neu was appropriate because discharge was completed within the laytime provisions of the charter party once the running of laytime recommenced.
 
 
 13
 The decision of the District Court is affirmed in all respects.